We know who you are, but if you could separately identify yourself for the record. I will do that, thank you. Gaston Bebby, appearing on behalf of Lawrence Saks. Okay. I guess Dr. Saks' troubles with the unclean hands doctrine continue. This case involves his two disability insurance carriers. And there's no question that Dr. Saks is his own worst enemy. In this case, there was substantial evidence during the trial that he had to substantially curtail his activities as a surgeon through his nurse, Ms. Corcoran. But in a boneheaded attempt to keep working, he continued. But if he would have just admitted that, I think his claim would have been denied, and we would have been here, and I would have been on the other side talking about the substantial damages that the insurance company was in disagreement with. As it is, the jury found at least a portion of his testimony credible because they awarded him a substantial amount of money for emotional distress. I think the issue is, again, one of equity. Can the insurance company, who frankly did no real investigation, even after the bad faith claim was presented, as to Dr. Saks' true physical condition, and I think that was obvious from reviewing Dr. Cohen's testimony at trial when he was asked whether or not he could state to a reasonable degree of medical certainty that Dr. Saks was not disabled, and he said no. When asked whether or not Dr. Saks could continue working as a surgeon under all of the pain medication that he was under, he said no. So there's no question that Dr. Saks had legitimate problems that prevented him from doing work and meeting, and he met the California definition of total disability. The question is, in the statements that he made, the ones that he did make that were untrue, and again, the record is unclear as to how many of those were. His claim went on for a period of years. Each month he submitted a statement. There's California law, I think it's the Erica case, that indicates that each one of those is in effect a separate claim. The question is, should whatever percentage it was of misstatements regarding his ability to work, his actual work, or his computer data, whether that's sufficient to let this insurance company off of paying him his $18,000 a month. And the trial court struggled with that. And I believe, and I cited the case law, that indicates that the trial court did not have ever sent the unclean hands instruction to the jury. It was objected to. The trial court could have made the same determination itself. What it did was... It was actually a question on the verdict form, wasn't it? It was, yes. And the jury found that he had acted with unclean hands. Correct. Tell me if you would, I am struggling with this argument, and I have gone around and around on this. Why is the jury verdict, in your opinion, inconsistent? Well, it's inconsistent because... Let's just sort of lay this out and make sure I understand. They found in favor of the appellee on its fraud claim, and the damages that were awarded were $844,000 plus a little bit more, which I understand is the exact amount that your client received in benefits and waived premiums. They found in favor of your client on the breach of contract counterclaim, and awarded zero in damages. Correct. And then they found in favor of your client on the breach of good faith and fair dealing counterclaim, and awarded $266,000 for mental suffering, anxiety, humiliation, distress. And then they made the finding that he acted with unclean hands. Why is that inconsistent? For several reasons. First of all, in order for the jury to find that the insurance company breached its contract in an insurance case, they would have had to find that benefits that were due were not paid. So having found that benefits that were due were not paid, then it's inconsistent for the jury to at the same time say that the insurance company is damaged by the amount of benefits that it paid. That's one inconsistency. The second inconsistency is on the bad faith, the duty of good faith and fair dealing. In order to reach that on the California law, they would have to find that the insurance companies withheld benefits without probable cause. Well, what benefits are we talking about? There was only one benefit, one type of benefit that was available here, and that was his monthly disability benefit payments. Thirdly, under California law, under the Egan case, future benefits are part of the duty of good faith and fair dealing, are recoverable under that claim, not under the claim for breach of contract. So here the jury had an opportunity and did find damages for breach of the duty of good faith and fair dealing, but they were not given the opportunity to make that decision as far as future benefits because it was mistakenly over-objection placed in the breach of contract special verdict form questionnaire. So for those reasons, I think the verdict form is inconsistent, and the judge... Is this a, in your opinion, is this a special verdict, or do we have essentially here a verdict that has general verdict questions in it? Is it a special or general verdict? In my view, I believe it's a special verdict. And that's because if it's a general verdict, we don't have legal authority to deal with inconsistencies, do we? I think the law is that generally you do not know. My counsel, I have a question for you. Sure. Judge Gould, in your argument you said that the, your argument about why you think the verdict's inconsistent, I think you said that the jury said that the insurance company was damaged to the extent of their payments they had made. Correct. So explain to me again, where did the jury say that? I know they awarded a damaged figure that seems to be roughly in that amount, but did they say they were giving those damages to recompense for the payments that had been made, or did they say that it was for something else? The jury didn't say what it was for, but prior to the jury being instructed, we stipulated as to the amount of back benefits, the amount of benefits paid to Dr. Sacks, and the amount of his waiver of premiums. So that was the figure that the jury was given. It was a stipulated amount, and that's what those two amounts represented. So I don't think there's much question that's what they were awarding. Okay, thank you. You're welcome. And going back to the general verdict form, I believe the law is that if it's a general verdict form and there's no objection prior to the jury being dismissed, and in the Ninth Circuit I think the rule is when counsel is invited to do so or to comment on it, which I was not in this case, counsel was not in this case, then this court does have the authority to look at the general verdict form and determine whether or not there were inconsistencies. And again, the trial judge was very conscientious, and he struggled with this. We had a couple of hearings on it, and he indicated that for the very reasons that I just set forth as to what California law is about damages in these types of insurance cases, that he had a problem with the inconsistency and the possible inconsistency of this verdict. So unless there are any other questions, I think I'd like to reserve my remaining time. Okay, let's hear from the other side, and then you will have time. Thank you. Thank you, Your Honors. My name is Evan Tager, and I represent the insurers. Let me start with the inconsistent verdict argument, although there were a couple of others raised in the brief that Mr. Bebby did not address, and I'll try to touch on those unless the court is satisfied that it's unnecessary. Let me start with the inconsistent verdict argument. This court has said time and time again that its duty under the Seventh Amendment is to harmonize the answers to verdict questions whenever it is possible. Any plausible understanding that makes sense of the verdicts requires that the verdict be upheld. And I would cite the court to White v. Ford Motor and the Los Angeles Nuthouse case as two prominent examples. Now, Mr. Sachs makes two different inconsistent verdict arguments. The third one that Mr. Bebby referred to is really an instructional argument about the future benefits, and I'll take that on separately. And under White v. Ford, I think these verdicts are perfectly and easily reconcilable. Mr. Bebby premises the argument on the assumption that the jury could not have found breach of contract and breach of the duty of good faith and fair dealing without also finding that he was disabled. Now, to quote the court in White v. Ford, that's a plausible reading, but it isn't the only plausible reading, and he needed to be the only plausible reading in order to overturn the verdicts. Now, if you take the jury instructions to which he did not object and the verdict form which he helped draft, these verdicts are perfectly understandable. The jury simply found that, one, he was not disabled. Two, the insurance companies breached the contract in other ways that are not material to the resolution of the claim, and some of those ways were set forth on the verdict form in the discussion of that faith claim, and you can look at those. It would be page 293 of the excerpts of record where they list the four that they wanted to focus on, and if you look at some of these, it's pretty clear that they have nothing to do with the ultimate resolution of the claim. So the jury could perfectly easily have said, yeah, they didn't handle this claim particularly well, but it didn't make any difference to the outcome. So no damages for breach of contract because the breach of contract instructions say that the purpose of damages is to put the plaintiff, in this case that would be Dr. Sachs, in the position he would have been but for the breach. Didn't the jury send a question out on this issue whether they could find a breach of contract and award zero damages? Yes, they did, Your Honor, and that's sort of a separate issue from the inconsistency. Right, I understand. I just wanted to clarify that. Absolutely address that before we wrap up. So I don't have any problem with inconsistency as it relates to the fact that they could find that your client mishandled the claim and still find that Dr. Sachs committed fraud and that your client's entitled to receive back the benefits and waive premiums that were paid. What about the issue of whether or not the breach of contract, finding that there was a breach of the contract is inconsistent? With the zero damages? Yeah, in awarding zero damages. And then isn't that inconsistent with them? Well, I don't know. I struggle with this, counsel. Help me with that. Help me with why that finding of breach of the contract counterclaim just seems to be – I mean, I don't know why the jury did that. Well, they made arguments about certain things in the claim handling, and the claim handling is part of the contractual obligation of the insurance company. So you're saying it's part and parcel of the good faith and fair dealing? Very similar. They're very similar. There were a bunch of things we were supposed to do. For example, there was this discussion of the termination letter says you have 180 days to appeal this, but we brought suit in less than 180 days, and they made something of that at the trial. So that may be a technical breach of the contract, but it really had nothing to do with whether or not he suffered injury as a result of the – Of the breach of the contract. Of that breach. And instead they chose to – to the extent they were concerned about what your client had done, they addressed that through the good faith and fair dealing counterclaim. They did. They did. I'm tempted to read it this way, which is consistent with where you want to end up. They award zero for breach of contract, understanding breach of contract to mean did the insurance company owe him money under the policy? And they say no, he was disabled. But they award a fairly substantial amount of money based upon the handling of the claim, which is independent as to whether or not they owed the money. And then consistent with they didn't owe him any money in terms of policy payments or in terms of benefits, that's what – that's why you got all the money back to your side. I mean, that all makes sense to me. Yeah, and that's our – that's our position. Yeah. All right. So if I may, I'd like to turn to the various instructional issues that Dr. Sachs has raised. And the first one, I'll start with the future benefits, which Mr. Bebby referred to in his argument. And I'd like to start with the fact that this argument was not adequately preserved under Rule 51. And I think that'll come as a surprise to Mr. Bebby, but let me explain why. He said to the court when this issue came up, and this is at page 346 of the excerpts of record, my understanding is that if Sachs prevails on the breach of contract, he's entitled to the breach of contract damages up to that point but not future damages. And the judge responded, no, but if the contract calls for the disability payment so long as he's permanently disabled, if he is permanently disabled, then he would get those benefits in the future. Those are contract damages. And then Mr. Bebby responded right and never made clear that he was affirmatively objecting to including future benefits as an element of contract damages. Then after Judge Wu actually instructed the jury, he asked the parties whether they had any objections to the instructions as read. That's page 350 of the excerpts. And Mr. Bebby raised only one objection, which had to do with one sentence in the bad faith instruction. So that, I think, plainly led the judge and us to believe that he had no objections to any of the other instructions. Now, in any event, this error, if it was an error, was perfectly harmless because the jury actually reached it as an antecedent issue. You know, usually it's the defendants who want it to be left until bad faith because they may never get to that stage. And so it was actually a benefit to their side to have the jury ask to award future benefits on the breach of contract claim. And the jury said no damages for that. So in light of that express finding, it's inconceivable that the jury would have awarded him damages for future benefits if only it had been placed in a different place on the verdict form. And I also want to point out, and this is not in our brief, but I think it's something you can consider, it's undisputed that he had, by the time of trial, lost his license. So he could not actually be entitled to any benefits in the future anyway. So to me, it's an entirely moot point. Now, the second instructional argument that Dr. Sachs raises has to do with the unclean hands instruction. And he basically, it's kind of hard to parse it apart from the brief, but he basically makes three arguments about this instruction. And again, I think we're going to find that they're not adequately preserved under Rule 51. He argues first that the jury used the instruction to fine for the insurers on the fraud claim. Second, the instruction gave the jury, quote, free reign to apply the unclean hands defense to the bad faith claim. And third, the jury should not have been instructed on unclean hands because not all of the conduct was related to Sachs' inequitable conduct. So as to the, now, at the charge conference, Mr. Bebby referred to an objection he made the day before, which was not transcribed. And you'll find that at page 343 of the excerpts. But from the context, it appears that the argument that he made was that unclean hands is not a defense to a bad faith claim and that the judge disagreed. But he never argued any of these three points that we're talking about today, that the jury might use the instruction to fine for the insurers on the fraud claim, that it gave them free reign to use it on the bad faith claim, or that it wasn't adequately limited to related conduct. And if you look, so he didn't say any of that to the court. And under Rule 51, the objection has to be specific. So I think that easily wipes out this entire argument. But in any event, each of the instructions, each of it, none of his arguments is valid because the instruction actually forecloses all of the three complaints he makes. It says that it is a defense, so therefore it couldn't be used to help the insurers on the fraud claim. And it never told the jury that they were supposed to do anything other than say whether there was unclean hands, and specify what the purpose, or what the unclean hands entailed. So there's nothing in the instruction to suggest that the jury was supposed to use the finding. And indeed, we know from the bad faith verdict that it didn't use the finding to wipe out the bad faith. So, and then the third complaint is that the instruction wasn't adequately, didn't adequately apprise the jury that the conduct had to be related. But in fact, it says it on its face, and in any event, it wasn't the jury that was making that determination. So that's the unclean hands instruction. Now, to the answer to the jury's question about whether you could have zero damages for a breach of contract. And as we pointed out in the brief, California law and the restatement of contracts both say that you can. And there is no case cited by Dr. Sachs to the contrary. So, and if you look at the jury instructions in the verdict form, it's clear that they contemplated that. The instructions treat breach and damages as two of the five elements of the claim. And then the verdict form separately asks, was there a breach and were there damages? So his answer was consistent. I'm sorry, go ahead. No problem. The judge's answer was consistent with the instructions, which again, Mr. Bebby never objected to. And the verdict form, which he negotiated. And then, in any event, if there were an error, which we don't think there was, it would be harmless. Because the jury's finding of unclean hands would have had to wipe out any award of contract damages. There would have been no discretion at that point, given the jury's finding, so it really made no difference. That leaves the cross appeal, if the court is interested in hearing about it. Go for it. Okay. So the cross appeal is about the judge not using the unclean hands finding to wipe out the bad faith damages. And there's basically two arguments that Dr. Sachs is raising here. The first one is the judge's rationale, which is that the conduct wasn't sufficiently related. And I think if the court takes a look at the California Court of Appeals decision in the Kendall-Jackson versus Gallo case, that should dispense with the trial court's rationale there. The Court of Appeals says in Kendall-Jackson that, and this is a quote from page 974 of the opinion in Kendall-Jackson, misconduct in the particular transaction or connected to the subject matter of the litigation that affects the equitable relations between the litigants is sufficient to trigger the defense. And in that case, the court held that improper marketing practices by Gallo, that these are competing winemakers, were sufficiently connected to Kendall-Jackson's trademark infringement sued against Gallo to justify applying the unclean hands defense in Gallo's action for malicious prosecution. So that was taking a very expansive view of what related means. And the court said that neither analogous case law nor the equitable principles underlying unclean hands doctrine supports the narrower rule that Gallo was arguing for. We think our case is a fortiori because here the acts of unlawful marketing by Gallo and the unclean hands defense in Gallo, the alleged bad faith that were on the verdict form that the jury potentially could have found to be the basis for the bad faith award, were integrally related to the very unclean hands with which Dr. Sacks came to the court. He was making a claim for benefits while deceiving the insurers. The insurers then made mistakes handling his claim. Dr. Sacks himself acted so badly, that is to say in the words of the jury, Dr. Sacks made false statements, concealed facts, and so on. Well, the jury knew all of that, but the jury having decided to award him $266,000 despite that argument, why isn't that not the end of the matter? It's not the end of the matter because this was not for the jury to do. The jury was just asked the two questions, was there unclean hands, what was it? The judge then has to apply the jury's findings and then so the judge had to undertake this determination, was it sufficiently related because that was not really, even though it was in the instructions, it wasn't a separate finding by the jury. So the court had to decide, was this or wasn't this sufficiently related to the bad faith claim? And so we're submitting he was mistaken in that given the decision in Kendall-Jackson. Does that make sense? What was the net verdict that found its way into the judgment in this case? Was it the amount of the $800,000 plus $1,000,000 minus the $266,000? Well, ultimately there would be that set off if we don't prevail on the cross appeal. So if we just do the subtraction, your client will end up with a little under $600,000. Well, unless you give him some money in the other case, we're going to wind up with nothing because he's managed to secrete all the assets, but that's not the court's problem. What other case are we talking about? The earlier case. I mean, he needs to win some money in that case for us to get some money in our case. Oh, I see. The case we heard just a moment ago. Oh, I see. I mean, we can't find his money. So maybe you can get him to find it for you. We've been trying. Trust me. I hope Mr. Beebe is getting paid. He needs to get money from us to get paid is my guess. The final point I want to make is Mr. Beebe's second argument is that there should be no application of unclean hands as a matter of law to a bad faith claim, citing the Kransko case. And just to reiterate what we've said in the brief, Kransko is about comparative bad faith. It's a different doctrine, and the premise of the whole thing is you can't compare an insured's bad faith, which is true. You can't treat it as a breach of contract to an insurer's bad faith, which is a tort. And that really has no application to the use of an equitable doctrine like unclean hands to bar any recovery. And as we point out in the brief, the Court of Appeal in the Carville case has actually used that doctrine in a bad faith case. So all of the guideposts are sort of pointing in the direction of saying that as Judge Wu did, that unclean hands can, as a matter of law, bar recovery for bad faith. Thank you, Your Honors. Thank you. Mr. Beebe? Thank you. Just as a first point, Mr. Tager was not part of the trial. However, if you look at the full transcript where he makes the assertion that I agreed with the judge that the future damages should remain where they were under the contract, the actual court language was by the court, no, but if the contract calls for disability payments so long as he's permanently disabled, and if he is permanently disabled, then he should get those benefits in the future. Those are contract damages. But he doesn't stop there. He goes on and he cuts me off, basically, and what he says is what I'm talking about now is just breach of implied covenant of fair dealing. We had the emotional distress stuff. That's when I said right to the question of do we have the emotional distress stuff. So I don't think the waiver argument is valid. And I was surprised to hear it. But in any event, did you stipulate to the verdict form? We negotiated the verdict form based on the judge's rulings at the time. But when the verdict form was actually offered by the court, did you object to it? No, I did not object to the verdict form because I thought that my prior objections were already preserved and it would be futile to re-raise them at that point in time. I mean, the judge was pretty adamant. It doesn't really come out from the transcript that these were contract damages, not bad faith damages. Just again, I hate to belabor the point of the inconsistent verdict, but the problem with trying to reconcile this verdict is that to do so, one has to assume that the jury just disregarded the instructions on damages. Well, the argument is that we have to see if there's a plausible support for the jury's verdict here. And the argument that's been made is, and I found it to be compelling. It actually sort of straightened this out for me. It is possible for the jury to find that there was a breach of the contract. If you take that finding in connection with their finding that there was a breach of the good judgment, then that's a breach of good faith and fair dealing. And so that's where they come down on that. They decide they're not going to give you any damages, your client any damages on the breach of contract. Instead, they're going to award your client damages for mental suffering for breach of good faith and fair dealing. To me, that seems plausible. I understand that, but in order for the jury to do that, they would have to ignore the following. In the context of a claim for breach of contract as to disability insurance benefits, the contract damages are limited to what the insurance company was obligated under the policies to pay, but has not yet paid. What are you reading in the instructions? I'm reading from the instructions. Read that one more time, please. Sure. In the context of a claim for breach of contract as to disability insurance benefits, the contract damages are limited to what the insurance company was obligated under the policies to pay, but has not yet paid. In other words, if you read all the jury instructions and also similar languages in the bad faith instructions, the jury is told that really the only thing we're talking about here are his ability, as far as damages, is his ability to recover the monthly benefits. But what you just read seems to me entirely consistent with my interpretation of what the jury thought it was doing. That is to say, yes, they breached the contract, by which they mean, as I get further down, they breached the implied covenant of good faith and fair dealing. But given the definition of damages you just read, they have no choice, really, but to say what damages as defined there, which is to say benefits owed, zero, because he is not disabled. So zero damages as defined, but breach of the implied covenant, $266,000. That sounds to me perfectly consistent. Which is consistent with their finding on the fraud claim, awarding the appellee damages, and their answer to the question regarding unclean hands. It is consistent with that, but it's inconsistent with finding a breach of the covenant of good faith and fair dealing, which requires a withholding of contract benefits without probable cause. I mean, there it is. Well, you know, as I look at this case, I think your client, assuming it survives, I think your client did very well to get $266,000 out of this, given his behavior. Well. As an offset to the money that was paid in benefits to which he wasn't entitled. I understand that he did better than expected at trial, your honor. Okay. It's my own humble opinion, but I think he owes you some money. He's actually up to date and paid. Okay. Okay. And the final thing is, you know, your honor, I think the question on eradicating my client's $266,000 verdict is a narrow reading of the winery cases, the Jackson, the Kendall Jackson case. The court, and we've cited the cases in my brief, is required, and this is what Judge Wu did, to review all the evidence, which he did. He asked for the transcripts and weighed the equities. And that's what he did. And what they're saying is he abused his discretion in finding out and determining that the equities favored preserving the $266,000 verdict. And I don't think the evidence is such to warrant that. Unless there are any other questions, I would like to thank the court. Thank you. You're welcome. No questions here. Thank you, your honor.
judges: W. Fletcher, Gould, Christensen